Jonathan A. Dessaules, State Bar No. 019439
Douglas C. Wigley, State Bar No. 027223
**DESSAULES LAW GROUP**
5353 North 16th Street, Suite 110
Phoenix, Arizona 85016
Tel. 602.274.5400
Fax 602.274.5401
jdessaules@dessauleslaw.com
dwigley@dessauleslaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Kristi Bray, an individual,<br><br>  Plaintiff,<br><br>  vs.<br><br>Maxwell & Morgan, P.C., an Arizona professional corporation; Charles E. Maxwell and Lisa Maxwell, husband and wife; Samuel C. Richardson and Nikki L. Richardson, husband and wife;<br><br>  Defendants. | No.<br><br>**COMPLAINT** |

Plaintiff Kristi Bray ("Bray") alleges the following:

### PARTIES AND JURISDICTION

1. Bray is a natural person and resident of Maricopa County, Arizona.

2. Defendant Maxwell & Morgan, P.C. ("M&M") is an Arizona professional corporation located and doing business in Maricopa County, Arizona.

3. Defendant Charles E. Maxwell ("Maxwell") is a natural person and resident of Maricopa County, Arizona.

4. At all relevant times, Maxwell acted for the benefit of his marital community with Lisa Maxwell, who, upon information and belief, is also a resident of Maricopa County,

Arizona, and is named in this matter solely to notify her of Bray's claims against property belonging to the marital community.

5. Defendant Samuel C. Richardson ("Richardson") is a natural person and resident of Maricopa County, Arizona.

6. At all relevant times, Richardson acted for the benefit of his marital community with Nikki L. Richardson, who, upon information and belief, is also a resident of Maricopa County, Arizona, and is named in this matter solely to notify her of Bray's claims against property belonging to the marital community.

7. Jurisdiction exists pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1367.

8. Venue is proper in this Court as all acts alleged in this Complaint occurred within this judicial district.

## THE FAIR DEBT COLLECTION PRACTICES ACT

9. Congress enacted the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), after a congressional finding of abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, which contributed to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of personal privacy.

10. Section 1692a(3) defines the term "consumer" as any natural person obligated or allegedly obligated to pay any debt.

11. Section 1692a(5) defines the term "debt" as any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

12. Section 1692a(6) defines the term "debt collector" as any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of

which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

13. Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

14. Section 1692f of the FDCPA prohibits a debt collector from using unfair or unconscionable means to collect any debt.

15. The homeowners association assessments and other charges that Defendant collected and attempted to collect from Bray, as described herein, are primarily for personal, family, or household purposes, and constitute "debts" as defined in 15 U.S.C. § 1692a(5).

16. Defendants use instrumentalities of interstate commerce and/or the mails in their business, the principal purpose of which is the collection of any debts.

17. Defendants regularly collect or attempt to collect debts owed or asserted to be owed to another.

18. Defendants are debt collectors as defined in 15 U.S.C. § 1692a(6).

19. Defendants have used false, deceptive, and misleading misrepresentations and means to collect debts in violation of 15 U.S.C. § 1692e.

20. Defendants have engaged in unfair and unconscionable means to collect or attempt to collect debts in violation of 15 U.S.C. § 1692f.

**GENERAL ALLEGATIONS**

21. On or about July 20, 2009, Bray acquired the real property located at 170 E. Guadalupe Rd., #152, Gilbert, Arizona 85283 (the "Property").

22. Bray acquired the Property to use as her personal residence and at all times relevant to this Complaint has used it as her personal residence.

23. The Property is subject to the Declaration of Covenants, Conditions and Restrictions for Breckenridge Townhomes, which was recorded on or about September 7, 1984,

with the Maricopa County Recorder's Office at recording number 1984-0393834 (the "Declaration").

24. The Declaration provides for the creation of The Breckenridge Townhomes Association, Inc. (the "Association").

25. The Declaration generally requires that owners of properties subject to it pay assessments to the Association.

26. The Declaration, at section 5.8, allows the Association to recover its reasonable attorneys' fees incurred in collecting any unpaid assessments.

27. Upon information and belief, M&M and its attorneys, including Maxwell and Richardson, have represented the Association at all times relevant to the allegations in this Complaint.

28. Upon information and belief, the Association's fee agreement with M&M and its attorneys, assigns certain "soft costs," which are defined as late charges, fines, penalties, rebill fees, demand letter charges/fees, lien fees, and other non-principal assessment charges, to M&M, so that those items no longer belong to the Association.

29. Since Bray acquired the Property in July 2009, Heywood Realty & Investment, Inc. ("Heywood") acted as the management company for the Association.

30. As the Association's management company, Heywood was authorized to and did, among other things, receive and collect owners' payments for assessments.

31. From July 2009 through March 2016, Bray sent her monthly assessment payments to Heywood.

32. Through January 2016, all of Bray's payments that were sent to Heywood were accepted and cashed by the Association.

33. On March 22, 2016, with no warning or communication to Bray, Maxwell recorded a document titled Notice and Claim of Lien by Homeowners Association with the Maricopa County Recorder at recording no. 2016-0184134 (the "Notice of Lien").

34. A copy of the Notice of Lien is attached as Exhibit A to this Complaint.

35. The Notice of Lien utilized a lawsuit caption, which stated ""BRECKENRIDGE TOWNHOMES HOMEOWNERS ASSOCIATION, Claimant vs. KRISTI BRAY, Reputed Owner," suggesting that a lawsuit had been filed by Association against Bray, when no such lawsuit had ever been filed.

36. The Notice of Lien stated that as of March 22, 2016, Bray owed the Association "not less than $1,087.60, plus accruing assessments, other charges, late charges and interest on all amounts at the highest rate permitted by law."

37. Bray owed nothing to the Association on March 22, 2016.

38. The Notice of Lien also stated that Bray was responsible for all attorneys' fees incurred as a result of the alleged delinquency, despite the Declaration only entitling the Association to reasonable attorneys' fees.

39. Upon information and belief, the $1,087.60 claimed in the Notice of Lien included rebill fees, late charges, demand letter charges/fees, and lien fees that did not belong to the Association and that Bray was not otherwise obligated to pay.

40. The $1,087.60 claimed in the Notice of Lien includes unreasonable costs and fees that the Association is not entitled to.

41. The Notice of Lien also included a notice on M&M letterhead stating, among other things, that it is a debt collector attempting to collect a debt

42. On March 31, 2016, Maxwell, using M&M letterhead, delivered a letter to Bray stating that she owed the Association $1,488.98 (the March 31, 2016 Letter").

43. A copy of the March 31, 2016 Letter, with attorney-client communications redacted, is attached as Exhibit B to this Complaint.

44. Bray owed nothing to the Association on March 31, 2016.

5

45. Upon information and belief, the $1,488.98 claimed in the March 31, 2016 Letter included "soft costs" such as rebill fees, late charges, demand letter charges/fees, and lien fees that did not belong to the Association and that Bray was not otherwise obligated to pay.

46. The $1,488.98 claimed in the March 31, 2016 Letter includes unreasonable costs and fees that the Association is not entitled to.

47. Upon receipt of this letter, Bray contacted M&M and spoke to a representative named "Suzie."

48. Suzie informed Bray for the first time that the Association ceased using Heywood as its management company in October 2015 and had been using First Service Residential ("FSR") as its management company since that time.

49. Neither the Association, Heywood, nor FSR ever informed Bray of this change prior to her contacting M&M.

50. Suzie told Bray that FSR attempted to mail notices to Bray, but instead of sending the notices to the Property, where Bray has lived since acquiring it in 2009, it sent the alleged notices to Bray's former address at 7017 S. Priest Dr., Tempe, AZ 85283, which she had not lived in since prior to acquiring the Property.

51. After speaking with Suzie at M&M, Bray reviewed the status of the checks that she had been sending to Heywood from October 2015 through March 2016, and confirmed that the checks through January 2016 had been cashed, but the checks for February and March 2016 had not been cashed.

52. Pursuant to Suzie's instructions, Bray instructed her bank to stop payment on the February and March 2016 checks, which were for $139.00 each, representing the monthly assessments owed.

53. Furthermore, pursuant to Suzie's instructions, when the stop payments on the February and March 2016 checks were completed and the funds returned to Bray, she sent, on or

about April 20, 2016, a new payment totaling $278.00 directly to M&M as a replacement for the February and March 2016 checks.

54. Starting in April 2016, Bray has timely sent all monthly assessment payments directly to FSR, which has accepted and caused all payments to be cashed.

55. On June 14, 2016, Richardson emailed Bray (the "June 14, 2016 Email") and admitted that the Association sent mail to the wrong address and despite Bray's continued timely payments she was still obligated to pay all charges claimed in the Notice of Lien and the March 31, 2016 Letter to the Association, which included late charges, rebill fees, demand letter fees, lien fees, transfer to collections fees, and attorneys' fees.

56. A copy of the June 14, 2016 Email is attached as Exhibit C to this Complaint.

57. In June 14, 2016 Email, Richardson failed to inform Bray what amount was allegedly owed and instead requested she let him know how she wanted to proceed.

58. Additionally, he stated that the Association would not waive any of the charges, including "soft costs," despite, upon information and belief, the Association not having any interest in the "soft costs," which were assigned to M&M.

59. On August 8, 2016, Richardson emailed Bray again (the "August 8, 2016 Email") stating that she owed the Association $1,887.11

60. A copy of the August 8, 2016 Email is attached as Exhibit D to this Complaint.

61. Bray, who has continued to regularly and timely pay the monthly assessments, owed nothing to the Association on August 8, 2016.

62. Richardson also stated in the August 8, 2016 Email that $397.00 of the $1,887.11 owed was for attorneys' fees, but according to at least one ledger for Bray's account, the attorneys' fees allegedly owed on March 31, 2016, were $401.38.

63. Upon information and belief, the $1,887.11 claimed in the August 8, 2016 Email included "soft costs" such as rebill fees, late charges, demand letter charges/fees, and lien fees that did not belong to the Association and that Bray was not otherwise obligated to pay.

64. The $1,887.11 claimed in the August 8, 2016 Email includes unreasonable costs and fees that the Association is not entitled to.

65. Arizona law, at A.R.S. § 33-1807(J) requires that "all payments received on a member's [HOA] account shall be applied first to any unpaid assessments, for unpaid charges for late payment of those assessments, for reasonable collection fees and for unpaid attorney fees and costs incurred with respect to those assessments, in that order."

66. Upon information and belief, Defendants have applied Bray's payments to attorneys' fees and other charges instead of applying it to alleged unpaid principal assessments in violation of A.R.S. § 33-1807(J).

67. On August 9, 2016, Richardson emailed Bray again (the "August 9, 2016 Email") and stated that "attorney fees will continue to increase so long as we do not arrive at an agreement."

68. A copy of the August 9, 2016 Email is attached as Exhibit E to this Complaint.

69. The August 9, 2016 Email was a follow-up to August 8, 2016 Email and effectively restated the misrepresentation stated and unfair and unconscionable practices contained in the August 8, 2016 Email.

70. On September 21, 2016, Richardson again emailed Bray (the September 21, 2016 Email") and claimed that she owed the Association $2,112.11.

71. A copy of the September 21, 2016 Email is attached as Exhibit F to this Complaint.

72. Bray, who has continued to regularly and timely pay the monthly assessments, owed nothing to the Association on September 21, 2016.

73. Upon information and belief, the $2,112.11 claimed in the September 21, 2016 Email included "soft costs" such as rebill fees, late charges, demand letter charges/fees, and lien fees that did not belong to the Association and that Bray was not otherwise obligated to pay.

8

74. The $2,112.11 claimed in the September 21, 2016 Email includes unreasonable costs and fees that the Association is not entitled to.

75. On September 27, 2016, counsel for Bray sent Richardson a letter explaining why Bray owed nothing to the Association, but enclosed a check for $600.00 to resolve the matter in full.

76. That $600.00 check stated in the memo line that it represented "pmt. In full – disputed debt."

77. On November 15, 2016, Richardson, using M&M letterhead, returned the $600 check and claimed that she owed $2,686.78.

78. On November 18, 2016, Bray, through counsel, requested that Defendants record a full release relating to the Notice of Lien.

79. On November 22, 2016, Defendants responded and stated that they will not record any release.

80. Defendants have not recorded any release relating to the Notice of Lien nor have they corrected it in any way.

## COUNT ONE
## VIOLATION OF 15 U.S.C. § 1692e

81. Bray incorporates all of the above allegations as if set forth fully herein.

82. Section 1692e of the FDCPA prohibits a debt collector from using false, deceptive, or misleading representations or means in connection with the collection of any debt.

83. These false, deceptive, and misleading misrepresentations and means include, but are not limited to, false representations regarding the character, amount, or legal status of any debt and any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

84. Defendants used false, deceptive, and misleading representations or means in connection with the collection of a debt in violation of 15 U.S.C. § 1692e in in the Notice of Lien and in the March 31, 2016 Letter.

85. Specifically, but not necessarily limited to, Defendants violated 15 U.S.C. § 1692e in the following ways:

  a. The Notice of Lien uses a lawsuit caption suggesting that a lawsuit has been filed when no such lawsuit has been filed.
  b. The Notice of Lien claims that Bray will owe "all" attorneys' fees incurred in collection, but the Declaration only obligates an owner to pay "reasonable" attorneys' fees.
  c. The amounts claimed to be owed to the Association in the Notice of Lien included "soft costs" that the Association had, upon information and belief, assigned to M&M and the Association no longer had any interest in.
  d. The Notice of Lien overstated the amount that Bray owed the Association.
  e. The amounts claimed in the Notice of Lien include unreasonable fees and costs that Bray was not obligated to pay.
  f. The March 31, 2016 Letter overstated the amount that Bray owed to the Association.
  g. The amounts claimed to be owed to the Association in the March 31, 2016 Letter included "soft costs" that the Association had, upon information and belief, assigned to M&M and the Association no longer had any interest in.
  h. The amounts claimed in the March 31, 2016 Letter include unreasonable fees and costs that Bray was not obligated to pay.
  i. The June 14, 2016 Email, August 8, 2016 Email, the August 9, 2016, and the September 21, 2016 Email all overstate the amount owed and demand unreasonable fees and costs.

j.  Additionally, these communications claim certain "soft costs" on behalf of the Association, which, upon information and belief, has assigned such "soft costs" to M&M and it is no longer entitled to collect them.

k.  The June 14, 2016 Email also fails to specify any amount owed leaving the debtor to question the amount and seriousness of the claim.

l.  Upon information and belief, Defendants applied payments from Bray to costs and fees, instead of to assessments, in violation of A.R.S. § 33-1807(J).

86. Pursuant to 15 U.S.C. § 1692k, Bray is entitled to recover damages (actual and statutory), costs of this action, and a reasonable attorney's fee as determined by the Court.

## COUNT TWO
### VIOLATION OF 15 U.S.C. § 1692f

87. Bray incorporates all of the above allegations as if set forth fully herein.

88. Section 1692f of the FDCPA prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect any debt.

89. Defendants have used unfair and unconscionable means to collect an alleged debt in violation of 15 U.S.C. § 1692f for the conduct alleged above.

90. Defendant's violations of § 1692f include, but are not limited to, the following:

a.  Representing that a lawsuit has been filed in the form of the Notice of Lien, when no such suit had been filed.

b.  Exercising a contractual and statutory assessment lien for unreasonable amounts that were not owed.

c.  Seeking to recover alleged debts for the Association, which it assigned and had to no right to.

d.  Admitting that the Association erred in failing to inform Bray it had switched management companies, but demanding anyway that she is responsible for unreasonable fees and costs caused solely by the Association's error.

  e. Misapplying Bray's payments to costs and fees, rather than assessments, causing the assessment balance, which can be foreclosed on in certain circumstances, to be overstated.

  f. Intentionally misstating the contractual obligation to pay attorneys' fees by claiming that Bray will owe "all" fees, when the Declaration only obligates owners to pay "reasonable" fees.

  g. Refusing to accept Bray's payment in full, which was for an amount greater than any actual amount owed.

91. Pursuant to 15 U.S.C. § 1692k, Bray is entitled to recover damages (actual and statutory), costs of this action, and a reasonable attorney's fee as determined by the Court.

## COUNT THREE
### VIOLATION OF A.R.S § 33-420(C)

92. Bray incorporates all of the above allegations as if set forth fully herein.

93. Defendants M&M and Maxwell are both named in the Notice of Lien, which purports to create in interest in, or a lien or encumbrance against, the Property, and Defendants M&M and Maxwell know or should know that the Notice of Lien is groundless, contains material misstatements or false claims, or is otherwise invalid.

94. Despite request to remove and release the Notice of Lien, Defendants M&M and Maxwell have refused to do so.

95. Defendants Maxwell and M&M are liable to Bray for the sum of not less than one thousand dollars, or for treble actual damages, whichever is greater, and reasonable attorney fees and costs as provided in this section, because they willfully refuse to release or correct the Notice of Lien within twenty days from the date of a written request from the owner or beneficial title holder of the real property.

///
///

WHEREFORE, Bray prays for the following judgment and relief against Defendants, jointly and severally:

  (A) Awarding Bray actual damages in an amount proven at trial pursuant to 15 U.S.C. § 1692k(a)(1);

  (B) Awarding Bray statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) against each Defendant;

  (C) Awarding Bray damages for the wrongful Notice of Lien in an amount not less than one thousand dollars, or for treble actual damages, whichever is greater, pursuant to A.R.S. § 33-420(C).

  (D) For an award of costs and reasonable attorneys' fees as determined by the Court pursuant to 15 U.S.C. § 1692k(a)(3) and A.R.S. § 33-420(C);

  (E) Awarding Bray pre-judgment and post-judgment interest as permissible by law; and

  (F) Awarding such other and further relief as the Court deems just and proper.

DATED this 15th day of February 2017.

        DESSAULES LAW GROUP

        By: /s/ Douglas C. Wigley
          Jonathan A. Dessaules
          Douglas C. Wigley
          *Attorneys for Plaintiff*